## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
  )
**MONICA M. MCKINNON, M.D.,**  )
  )
**Plaintiff,**  )
  )
**v.**  )
  )
**UNUM GROUP, PROVIDENT LIFE AND**  )
**ACCIDENT INSURANCE COMPANY,**  )
**AND AXA EQUITABLE LIFE**  )
**INSURANCE COMPANY,**  )
  )
**Defendants.**  )
_____ )

**CIVIL ACTION**
**NO.  4:17-10262-TSH**

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket No. 55)

### FEBRUARY 1, 2021

**HILLMAN, D.J.,**

Dr. Monica McKinnon ("Plaintiff") filed this action against her insurers for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair insurance claim settlement practices, in violation of M.G.L. c. 93A §§ 2,9 and M.G.L. c. 176D § 3(1)(a) and §§ 9 (a), (b), (d), and (f).  Defendants AXA Equitable Life Insurance Company ("Equitable"), Provident Life and Accident Insurance Company ("Provident"), and insurance holding company Unum Group Inc. ("Unum") (collectively, "Defendants" and "Unum") filed this motion for partial summary judgment on Plaintiff's First Cause of Action for unfair insurance claim settlement practices claims.  The Court held a hearing on September 11, 2020.  For the reasons set forth below, the Defendants' Motion for Partial Summary Judgment is ___**granted in part and denied in part.**___

## I.     Factual Background

Plaintiff is an OB/GYN licensed to practice in the Commonwealth of Massachusetts.  On November 20, 1995, Defendant The Equitable Life Insurance Society of the United States issued Plaintiff a disability insurance policy (the "Equitable Policy").  (Ex. 1, Docket No. 57-1).  On October 23, 2002, Defendant Provident Life & Accident Insurance Company issued the Plaintiff a disability insurance policy (the "Provident Policy").  (Ex. 2, Docket No. 57-1).  Both Policies contained a provision that each insurer would pay the Plaintiff a certain monthly benefit if she became totally disabled.  Under the Equitable and Provident Policies, totally disabled meant that the claimant was unable to perform the material and substantial duties of her occupation and was either under a physician's care or provided written proof that a physician's care would not benefit her.  (Ex. 1 at 15; Ex. 2 at 13; Docket No. 57-1).

Plaintiff stopped working on May 16, 2014 due to back pain.  (Pltf's Statement of Material Facts ¶ 8, Docket No. 72) (hereinafter "Pltf's SOMF").  She submitted a Total Disability claim under the Equitable and Provident Policies on July 22, 2014, based on the following medical conditions: "herniation of lumbar disc L5-S1, arthritis of back (lumbar spine) lumbar radiculopathy." (¶ 9).  Her claim included her personal statement that she could no longer flex at her spine, twist her waist, lean over, or crouch without the possibility of severe pain, which required her to straighten her back.  (¶ 11).  According to Plaintiff, there was a high risk that she could injure or cause the death of a patient or baby due to her inability to remain in the necessary physical position to deliver a baby, care for the mother, or perform exams or surgical procedures without complications.  (¶ 11).

Plaintiff also included an Attending Physician Statement from Dr. Brasier, which certified Plaintiff's ongoing disability beginning May 16, 2014, contained a diagnosis of lumbar

disc herniation with radiculopathy, and described the Plaintiff's physical restrictions as: "no bending no squatting no lifting no back flexion or extension work. no sitting for more than 15 min. no prolonged standing > 15 min." (McKinnon Claim File, Docket No. 62 at 288-90) (hereinafter "Claim File"). Dr. Brasier added that due to those physical restrictions, the Plaintiff "would not be able to do the work of an OB/GYN Physician as the position requires her to do all of her current physical restrictions noted above." (Claim File at 289). Plaintiff also provided contact information for doctors or physical therapists who had treated her, including Dr. Brasier, DC, Sports Medicine, Osteopathy; Dr. Chi, Neurosurgery; Kathryn DeAnzens, Primary Care Physician; Dr. Elson; Dr. Meleger; Westwood Physical Therapy; and Spaulding Rehabilitation Physical Therapy. (Claim File at 218, 225). Finally, she listed the three pain medications Dr. Brasier had prescribed her since her injury. (*Id.* at 218).

Provident and Equitable assigned Unum Disability Benefits Specialist Krager to investigate the Plaintiff's claim for both policies. Unum's investigation began on July 22, 2014 when the Plaintiff transmitted her claim, and concluded on or about December 2, 2014, when Krager informed the Plaintiff by phone that her Total Disability claim would be denied.

The investigation involved many stages as Plaintiff submitted certain information to Unum and Unum requested and obtained medical records from her various doctors and physical therapists. Krager spoke with the Plaintiff to discuss her claim and Unum's claims process on August 14, 2014. During this conversation, the Plaintiff informed Krager that she had injured her back helping move boxes for her mother in March 2014, could no longer perform the duties of her occupation, and that a neurosurgeon, Dr. Chi, had informed her she was not a candidate for surgery. (Plft's SOMF ¶ 15). Then Krager assigned RN Morin to review the Plaintiff's medical records and claim submissions materials. (*Id.* at ¶ 17). RN Morin referred the Plaintiff's

file to one of Unum's onsite physicians to determine if the Plaintiff's medical records supported the physical restrictions and limitations that she and Dr. Brasier had reported. (Claim File at 455). On August 26, Krager ordered a two-day surveillance operation to ascertain whether Plaintiff's public activity comported with her reported physical restrictions, which was carried out on September 4 and 5. (Pltf's SOMF ¶ 20).

Unum's onsite physician Dr. Beavers reviewed Plaintiff's claim file on September 3, which included records from Dr. Brasier, Dr. Chi, and Dr. Elson. (Claim File at 760-63). Dr. Beavers disagreed with Dr. Brasier's clinical findings that the Plaintiff was permanently disabled and arranged a phone call to discuss her prognosis on September 11. (Pltf's SOMF ¶ 24).

Following their phone call, Dr. Brasier and Dr. Beavers exchanged letters concerning the Plaintiff's case on September 12 and September 26, and Dr. Brasier faxed additional records to Dr. Beavers on September 29; their disagreement about Plaintiff's disability was not resolved. (¶ 24, 30). Dr. Beavers conducted a second review of Plaintiff's file on September 15. (¶ 27). On September 24, Unum conducted a vocational analysis and agreed with the Plaintiff about the general physical demands of her occupation providing direct patient care as an OB/GYN. (¶ 29).

Because of his outstanding difference of opinion with Dr. Brasier, Dr. Beavers ordered that an Independent Medical Examination ("IME") of the Plaintiff be conducted by a non-Unum physician. Neurosurgeon Dr. Saris conducted the IME on October 21, which included a physical examination of the Plaintiff and a paper review of her medical records and imaging studies. (¶ 33). Unum received Dr. Saris' final report on November 12, after Dr. Saris had reviewed Plaintiff's MRIs. (¶ 42). Dr. Saris found the Plaintiff's medical records were "uniformly normal" and that "[w]hile . . . the demands of an OB-GYN physician are significant, she could

return to work immediately and without restriction of any kind at this time." (Ex. 17 at 8, Docket No. 74-12).

Dr. Beavers reviewed the claim file with the IME Report on November 19 and concluded that no further medical activity on the claim was necessary. (Claims File at 1314). On December 2, Krager informed the Plaintiff by phone that her claim would be denied under both policies; the Plaintiff received a formal letter of denial on December 9. (¶ 45-49). Unum granted the Plaintiff four months of benefits in consideration of the length of the investigation. (¶ 47).

In lieu of appealing the denial, the Plaintiff retained an attorney and sent Unum a 93A Demand Letter on August 3, 2015 alleging that Unum had treated her claim unfairly. (Ex. 24, Docket 74-19). The 93A Demand Letter contained new medical records and information that post-dated Unum's December 2014 decision to deny coverage, including:

- Plaintiff's May 15, 2015 IME performed by Dr. Panis for Berkshire Life Insurance, which found that Plaintiff's May 2014 spinal X-Ray was "essentially normal;" her May 2014 lumbar MRI showed "a herniated disc at L5-S1, contacting nerve roots on both sides;" her February 2015 thoracic spinal MRI revealed "minimal to mild central disk protrusions at C6-7 and T9-10 with no spinal stenosis,"[1] and her April 2015 cervical spine MRI revealed two small herniated disks without any neural compression. (Ex. 25 at 2, Docket 74-20). Dr. Panis conducted a physical examination of the Plaintiff and observed her May 2015 Functional Capacity Evaluation at Spaulding Rehabilitation Hospital. (*Id.* at 6). Unlike Dr. Saris, he concluded that the Plaintiff could only perform sedentary work, as she was "quite limited in her reaching above and below the shoulder level, squatting, bending, kneeling, pushing, pulling. . . Her current lifting capacity on an occasional basis is quite limited . . . to 10 pounds maximum." (*Id.* at 7). Because Plaintiff's OB/GYN work included physical exams and surgical procedures, this meant that she could not perform the duties of her occupation.

- Plaintiff's May 15, 2015 Functional Capacity Evaluation ("FCE") performed at Spaulding Rehabilitation Hospital by physical therapist Kohlhofer. The FCE measured Plaintiff's capacity to perform physical movements such as climbing stairs, sitting, squatting, and lifting weights from the floor or overhead. (Ex. 26 at 3-4,

---

[1] Plaintiff included her February 2015 thoracic spinal MRI and her April 2015 cervical spinal MRI reports in her August 3, 2015 93A Demand Letter to Unum. (Docket No. 74-19 at 68, 82-83).

Docket No. 74-21).  Kohlhofer had Plaintiff simulate common OB/GYN procedures, such as laparoscopy, delivery, and vaginal surgery, and found that Plaintiff could not tolerate any of the required physical positions for those procedures longer than 45 seconds.  (*Id.* at 4).

- Plaintiff's January 15, 2015 sworn statement that her pain had not abated and she remained unable to perform the duties of her occupation, and that Dr. Saris' IME was "unpleasant, incomplete, and inaccurate." (Ex. 24 at 48-50, Docket No. 74-19).  The Plaintiff's chief complaints were that Dr. Saris cut off her answers to his exam questions; failed to check the range of motion of her thoracic or lumbar spine during her exam; did not palpitate her muscles to check for spasms; that he misread her May 2014 MRI as normal; and that his report contained inaccurate information about her reported symptoms, the origin of her injury, and that she had successfully undergone one spinal injection.[2]  (*Id.* at 49-50).

- A March 2015 medical record from Dr. Chi, stating that the Plaintiff "is certainly suffering from the degenerative disc at L5-S1, which is making it very difficult to perform her work duties confidently given the sudden onset of pain that may occur with bending and twisting . . . It is my hope that with further rest and rehabilitation and back strengthening and training, that there may become a point in time in which Monica feels more confident with returning back to work, but this is not guaranteed nor expected given the degree of degenerative disc disease at L5-S1. . ." (*Id.* at 77).

- An April 2015 letter from neurologist Dr. Niles to Plaintiff's primary care physician, Dr. Cataldo, that Plaintiff's neurological exam was normal, her range of back motion was limited, she showed some "point tenderness" in her back, and that the cause of her pain was unclear.  (*Id.* at 80-81).  Dr. Niles described Plaintiff's May 2014 lumbar MRI as showing "mild degenerative disc disease at L5-S1 with a small central disc protrusion" that "does not significantly compress or displace the S1 nerve root."  She did not opine on whether the Plaintiff was physically able to work as an OB/GYN. (*Id.* at 81).

Unum assigned Appeals Specialist Walsh to prepare a response to the Plaintiff's 93A Demand Letter.  As Krager had done with the initial claim, Walsh referred the file to an Unum RN for review to determine what Plaintiff's restrictions and limitations were.  RN Grover reviewed the updated file on August 18, 2015, including Dr. Panis' IME, Dr. Chi's March 2015 report, Dr. Niles' April letter, Dr. Saris' IME, and Dr. Brasier's September 26, 2014 letter to Dr. Beavers.  On August 25, 2020, Unum physician Dr. Charles Sternbergh also reviewed the

---

[2] Dr. Meleger attempted to perform an epidural steroid injection to treat Plaintiff's back pain on May 21, 2014 but the procedure could not be completed because Plaintiff became "extremely uncomfortable."  (Claims File at 704).

Plaintiff's updated file and determined that the Plaintiff could return to work "on a physical basis" because "[t]here has been no medical explanation for back pain of sufficient intensity to prevent this level of physical activity." (Ex. 30 at 5, Docket No. 74-24). Dr. Sternberg determined that Plaintiff's physical limitations were based on her fear of movement rather than organic pain and recommended that Unum consult a psychiatrist. (*Id.* at 6). Unum psychiatrist Dr. Brown reviewed Plaintiff's file and found that there was no evidence the Plaintiff's reported restrictions and limitations were caused by a behavioral health issue. (Claims File at 631-32).

On September 9, 2015, Unum responded to Plaintiff's 93A letter, affirming denial of coverage under both the Equitable and Provident policies and declining further settlement talks. (*Id.* at 650-52). The letter noted that if the Plaintiff disagreed with Unum's decision, she could bring a civil suit under Section 502(a) of the Employee Retirement Income Security Act ("ERISA"). (*Id.* at 652).

## II.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute precludes summary judgment if it is both "genuine" and "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id.*

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'"  *Rakes v. United States*, 352 F.Supp.2d 47, 52 (D. Mass. 2005) *aff'd*, 442 F.3d 7 (1st Cir. 2006) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548).  Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute.  *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

## III.   <u>Discussion</u>

*Unfair Insurance Claim Settlement Practices*

Chapter 176D sets out fourteen insurance claim settlement practices that are statutorily unfair. M.G.L. c. 176D § 3(9)(a)-(n).  Chapter 93A creates a private right of action for consumers injured by the unfair practices listed in 176D and provides for injunctive relief, the recovery of attorneys' fees and costs, actual damages, and up to three but no less than two times a plaintiff's actual damages if the violation was knowing, willful, or in bad faith. M.G.L. c. 93A §9(1), (3), (4).

Plaintiff alleges that Unum engaged in four of the fourteen unfair claim settlement practices identified in Chapter 176D: (1) misrepresenting pertinent facts or insurance policy provisions, in violation of c. 176D § 3(9)(a); (2) failing to acknowledge and act reasonably promptly upon communications with respect to claims, in violation of c. 176D § 3(9)(b); (3) failing to conduct a reasonable investigation, in violation of c. 176D § 3(9)(d); and (4) failing to

effectuate a prompt, fair, and equitable settlement of claims when liability has become reasonably clear, in violation of c. 176D § 3(9)(f).

### A. 176D § 3(9)(a): Factual or Policy Provision Misrepresentation

§ 3(9)(a) prohibits an insurer from "[m]is representing pertinent facts or insurance policy provisions relating to coverage at issue."

Unum maintains that it did not misrepresent any pertinent fact or insurance policy provision throughout the course of the initial claim investigation, its review and response to the Plaintiff's 93A Demand Letter, and during this litigation.  Plaintiff claims that Unum violated 9(a) in two ways: by requiring objective evidence of disability to approve Plaintiff's claim, and by informing her that her insurance policies might be governed by ERISA.

"A plausible, reasoned legal position that may ultimately turn out to be mistaken—or simply, as here, unsuccessful—is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D."  *Guity v. Commerce Ins. Co*., 36 Mass. App. Ct. 339, 343, 631 N.E.2d 75, 77 (1994).  "[E]ven when an insurer's conduct is unfair or deceptive in violation of G. L. c. 93A, the [plaintiffs] must prove that the insurer's conduct was the cause of any loss [they] sustained." *Polaroid Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 763, 610 N.E.2d 912 (1993).

Plaintiff's ERISA misrepresentation claim fails because Unum had a plausible argument that ERISA might be applicable and because Plaintiff has not shown that she was injured by any of Unum's statements regarding ERISA's applicability.  Unum asserted that Plaintiff's policies were governed by ERISA in its September 2015 answer to Plaintiff's 93A Demand Letter[3] and

---

[3] "If you disagree with this decision, you have a right to bring a civil suit under Section 502(a) of the Employee Retirement Income Security Act of 1974."  (Ex. 33 at 3, Docket No. 74-27; Ex. 34 at 3, Docket No. 74-28).

verbally suggested that ERISA might apply in settlement negotiations talks in January 2016. (Ex. 35 at ¶ 4, Docket No. 74-29).  An internal memo describing the settlement negotiations with Plaintiff's attorney shows that Unum believed that ERISA might apply because they had documentation showing that even if the Plaintiff had personally paid the policy premiums herself, she may have received group discounts based on her ER membership at University of Massachusetts Health System, potentially implicating ERISA.  (*Id.*).  I find that this position is plausible, meaning that Unum's ERISA statements to the Plaintiff did not violate 176D.  Even if they had, Plaintiff has no cause of action for misrepresentation because she has not shown how the ERISA statements injured her.  Despite Unum's repeated references to ERISA, Plaintiff timely asserted her 93A consumer rights by issuing a 93A Demand Letter and filing this lawsuit, and Unum acted on the Demand Letter as it was required to do.

Plaintiff's second basis for misrepresentation is that Unum violated the standards for assessing claims in its internal Benefit Center Claims Manual and the terms of a prior settlement agreement[4] by creating and applying a de facto, unwritten policy provision that her claim could not be approved without objective medical evidence.[5]  However, the Plaintiff's policies do not incorporate the policies in Unum's Claims Manual, and the Plaintiff has not pointed to a discrete provision in either policy that describes what types of evidence establish impairment, and which Unum misrepresented to her.

---

[4] In 2004, Unum entered into a Regulatory Settlement Agreement with the Department of Labor and 48 states, including Massachusetts, in which they agreed to reform their long-term disability claims processing practices and reevaluate hundreds of thousands of previously denied claims.  (Ex. 63 at 88-154, Docket No. 74-41).
[5] Neither party clearly defines objective vs. subjective evidence. However, the Court infers from their briefs and the "Using the Term Objective" (Ex. 74, Docket No. 70-28) and "Evaluation of Subjective Symptoms" (Ex. 75, Docket No. 70-29) Sections of UNUM's Claim Manual that objective evidence refers to a claimant's medical tests, imaging studies such as X-Rays and MRIs, and medical diagnoses, while subjective evidence refers to a claimant's self-reported symptoms (such as pain) and physical limitations.  Functional Capacity Evaluations, which involve measuring a claimant's physical ability to perform movements required by their profession, fall between objective and subjective, as the medical professional administrating the evaluation must consider the possibility that the claimant is malingering by overexaggerating or masking their symptoms to achieve a desired outcome.

3(a) violations must be based on a misrepresentation of a pertinent fact or policy provision.  Plaintiff's Provident and Equitable policies state that to qualify for total disability coverage, the claimant must be unable to perform the material and substantial duties of her occupation.  (Ex. 24 at 28, Docket No. 74-19).  In accordance with what the policies require, Unum determined whether Plaintiff could still perform the duties of her occupation as an OB/GYN.  To make that determination, Unum's medical staff and claims processors reviewed the Plaintiff's medical records and Dr. Saris' IME.  While Unum's reliance on objective evidence may amount to an inadequate investigation, *see infra* Part III.C, Unum did not misrepresent a fact relating to the claim or a policy provision in its communications with the Plaintiff because they made the determination the policy required before denying coverage.  Therefore, ***<u>Unum's motion for partial summary judgment as to Plaintiff's 9(a) claim is granted</u>***.

### B.   176D § 3(9)(b): Failure to Acknowledge and Act Reasonably Promptly Upon Communications

§ *3*(9)(b) requires insurers to "acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies."  The duty to communicate extends past an initial claim investigation through the claim appeal and 93A Demand Letter process through litigation.  *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 41 n.5 (1st Cir. 2000).

Unum states that it fulfilled its duty to acknowledge and act reasonably promptly upon communications throughout the initial claim investigation, its consideration of the 93A Demand Letter, and the instant litigation.  Plaintiff points to seven instances in which Unum failed to act reasonably promptly upon communications: 1) that Dr. Brasier certified Plaintiff's impairment in

May 2014, but Unum did not request an IME until September 2014; 2) that Unum's extra-contractual payment of four months of benefits to Plaintiff after denying her claim constituted an admission that Unum's coverage decision was unreasonably delayed; 3) that Unum failed to act when Plaintiff provided additional medical records beginning in 2015, including when she informed them during litigation that she had breast cancer and had undergone a radical mastectomy; 4) that Unum did not provide Dr. Saris with the Plaintiff's statement about her concerns with his IME examination and report; 5) that Dr. Saris did not prepare his report until April 2020, when the claim was denied in December 2014; and 6) that Defendant failed to consider the additional medical evidence that Plaintiff provided during the claim appeal.  (Pltf's Opp. at 11, Docket No. 70).

First, Unum's six-week delay in requesting an IME does not support a bad faith finding. Dr. Brasier may have certified the Plaintiff's impairment on May 14, but Unum could not begin its investigation until Plaintiff filed a claim for benefits on July 22.  Between July 22 and September 22, the date when Krager informed the Plaintiff that Unum needed to conduct an IME, Unum took multiple steps to advance its investigation: it requested and collected medical records from several medical providers that Plaintiff named in her claim form; an RN conducted a preliminary review of the Plaintiff's file; Dr. Beavers conducted two medical reviews and arranged a telephone call and exchanged follow-up correspondence with Dr. Brasier to discuss their divergent medical opinions; and Krager ordered surveillance of the Plaintiff to observe her level of physical activity.  Plaintiff has not said what Unum should have done to arrive more quickly at the point in their investigation when it that realized that an IME was necessary.

Second, Plaintiff's expert's argument that Unum's decision to pay Plaintiff four months of benefits in consideration of the length of the investigation is an admission that the claim had

taken longer than usual does not indicate bad faith.  Delays are not necessarily the result of bad faith, and the record reflects that Unum worked at a steady pace to collect evidence and reach a decision about the claim.  In addition to the investigatory tasks listed in the prior paragraph, between July 22 and December 2—when Unum informed Plaintiff by phone her claim would be denied—Unum also collected all of Plaintiff's professional billing codes, conducted a vocational analysis to ascertain the physical demands of her job, and collected Plaintiff's financial records, including tax returns and insurance information.

Plaintiff's remaining complaints about Unum's failure to act reasonably promptly upon communications are based on the period after she submitted her 93A Demand Letter with updated medical records and information in August 2015.

Third, Plaintiff claims that Unum failed to act reasonably promptly when she provided it with additional medical records beginning in August 2015, including that she had had breast cancer and undergone a radical mastectomy, as well as documentation showing that two of her other disability insurance carriers had approved her claim.  However, Plaintiff never explained why the cancer diagnosis and mastectomy were relevant to her disability claim for back and leg pain.  Furthermore, Plaintiff not shown why Unum had a duty to act promptly based on the benefits decisions of other insurers.  Unum did address the additional medical records that Plaintiff provided from those investigations in their response to the Plaintiff's 93A Demand Letter.

Plaintiff's fourth and fifth purported grounds are that Unum failed to act reasonably promptly by failing to provide its IME examiner, Dr. Saris, with her list of objections to his IME report, Dr. Panis' IME, and Spaulding's FCE after Plaintiff provided them to Unum in August 2015, are not the basis for a 3(a) violation. So far as the Court is aware, an insurer's IME

physician is not under the same type of ongoing duty to supplement their IME as new information becomes available as an expert witness testifying in federal court is.  While Unum had a duty to act reasonably promptly upon Plaintiff's complaints about the IME and evaluate whether their continued reliance on Dr. Saris' report was appropriate under 9(a), they did not have a duty to retain Dr. Saris to produce a revised IME.  That duty only attached to Dr. Saris when he became an expert witness in this case subject to Fed. R. Civ P. 26(e); his expert opinion addresses Plaintiff's objections to his IME and the medical records that postdate his IME. (Docket No. 74-23).

Sixth, Plaintiff claims that a reasonable person could find bad faith in Unum's failure to act on her complaints about Dr. Saris' IME.  Plaintiff's complaints about the IME were presented to Unum for the first time with her 93A Demand letter in August 2015, about seven months after Unum denied her claim and nine months after the IME.  Unum relied heavily on Dr. Saris' IME in its December 9, 2014 letters explaining its reasons for denying Plaintiff's claim, so a reasonable juror asking whether Plaintiff's claim was handled fairly would expect that Unum undertook some sort of investigation into those complaints rather than continuing to blindly rely on the Saris IME if the complaints were substantive and credible. (Docket Nos. 74-18 and 74-19).

Several of the concerns that Plaintiff shared with Unum about the Saris IME are serious. While some of Plaintiff's objections could be attributed to typos (noting "rare" hip pain instead of "right" hip pain; "Dr. Deavers" instead of "Dr. Beavers") others have no such benign explanation, such as Plaintiff's claims that Dr. Saris did not allow her to answer important questions, misreported her symptoms and the origin of her injury, did not check her lumbar spine

range of motion, did not palpitate certain muscles to check for spasms, and appeared to have predetermined the outcome of the exam.

When Unum received the Plaintiff's complaints about the IME, it was also presented with an IME performed on behalf of a different insurer which contradicted Dr. Saris' IME, letters from two insurers confirming they had approved Plaintiff's disability claim, and an FCE report that supported Plaintiff's and Dr. Brasier's opinions on Plaintiff's physical restrictions. In other words, they had a mounting pile of evidence supporting Plaintiff's claim and new evidence calling into question their strongest evidence against Plaintiff's claim: Dr. Saris' IME. Dr. Saris was the only physician or medical professional who conducted a hands-on examination of the Plaintiff and concluded that she was able to return to work as an OB/GYN. Unum should have addressed Plaintiff's substantial concerns about the Saris IME in its response to her 93A Demand Letter affirming its denial of coverage. (Claims File at 1649-51). A reasonable person could find that Unum's failure to address Plaintiff's objections to the Saris IME before responding to the 93A Demand Letter and upholding its earlier denial constituted a failure to acknowledge and act reasonably promptly upon communications. ***Unum's motion for partial summary judgment as to 9(b) is denied.***

### C. 176D § 3(9)(d): Failure to Conduct Reasonable Investigation

§ 3(9) (d) bars insurers from "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information." ***Unum's motion for partial summary judgment against Plaintiff's § (9)(d) claim is denied***.

"[R]ecovery on a theory of inadequate investigation is limited to circumstances where, if an adequate investigation had been conducted, liability would have been reasonably clear." *Spinal Imaging, Inc. v. Aetna Health Mgmt. LLC*, No. CIV. 09–11873–LTS, 2014 WL 4202498,

at *14 (D. Mass. Aug. 21, 2014) (citing *Behn v. Legion Ins. Co*., 173 F.Supp.2d 105, 113 (D.

Mass. 2001)). "In order to determine whether liability is 'reasonably clear,' the fact finder must

determine 'whether a reasonable person, with knowledge of the relevant facts and law, would

probably have concluded, for good reason, that the insurer was liable to the plaintiff.'" *Nyer v.

Winterthur Int'l*, 290 F.3d 456, 461 (1st Cir. 2002) (quoting *Demeo v. State Farm Mut. Auto. Ins.

Co.*, 38 Mass.App.Ct. 955, 649 N.E.2d 803, 804 (1995)). Relevant facts include: "insurance

industry practices in similar circumstances, expert testimony that the insurer violated sound

claims practices, the defendant's own evaluation of the plaintiff's claim, and advice given to the

insurance company on the probability of success at trial." *O'Leary–Alison v. Metropolitan

Property & Cas. Ins. Co.*, 52 Mass.App.Ct. 214, 752 N.E.2d 795, 798 n. 3 (2001).

 Taken in the light most favorable to the Plaintiff, the new evidence that Plaintiff provided

with her 93A Demand Letter in August 2015 would probably have led a reasonable person with

knowledge of the relevant facts and law to conclude that it was reasonably clear that Unum was

liable to the Plaintiff under both policies. At that time, Unum had the benefit of new evidence

that was not available when it denied Plaintiff's claim for benefits in December 2014, including

insurance company practices in similar circumstances: the Plaintiff provided proof that two other

insurers had approved the Plaintiff's disability claims premised on the same injury. Plaintiff

provided Unum with the May 2015 IME performed by Dr. Panis for one of those insurers, which

contradicted Unum's IME because it found that the Plaintiff was "not capable of an 8 hour work

day" and that "only sedentary work would be sustainable." (Ex. 35, Docket No. 74-20 at 7).

 Additionally, the Plaintiff has offered expert testimony from Mary Fuller that Unum's

conduct in the initial claims evaluation process and when Unum investigated the 93A Demand

Letter violated sound claims practices. Fuller has presented a plausible argument that Unum's

treatment of Plaintiff's claim violated the policies in its internal Claims Manual and created a de facto, unwritten policy provision that her disability claim could not be approved without objective medical evidence. Fuller contends that this unwritten rule "place[d] an inappropriate burden on claimants to justify eligibility."

The terms of Plaintiff's insurance contracts do not require objective evidence of disability; instead, the insurer must determine whether the claimant is "unable to perform the material and substantive duties of her profession" before denying or approving a claim. (Ex. 1 at 15; Ex. 2 at 13; Docket No. 57-1). Unum's Claim Manual is clear that objective evidence is not required to find that a claimant is impaired and cannot work. It establishes that both "subjective symptoms" such as pain and fatigue and "medical signs" such as tumors, broken bones, degenerative discs, and lab results "may result in functional limitations precluding a person from engaging in daily or work-related activities and may fluctuate over time." (Ex. 75 at 3, Docket No. 70-29). The Manual warns claims representatives that functional limitations based on subjective symptoms are much more difficult to determine, but that "[c]laim evaluations require consideration of all available information, including both medical signs and subjective symptoms, when reaching a claim determination." (*Id.*)

Dr. Beavers, Dr. Saris, and Dr. Sternbergh each cited the lack of objective medical evidence to support Plaintiff's total disability:

- Dr. Saris: "There is often a discrepancy between an individual's claim of pain and other problems after one or more traumatic events, and the medical records that pertain [to] them. Dr. McKinnon claims intractable back pain and other problems that prevent[s] her from returning to work as a physician . . . In this area of medicine, the standard by which these situations are evaluated are the neurologic examination and neuroimaging. . . During the neurological examination . . . there was no pattern of nerve injury of any kind. . . she has a normal MRI with minimal and age-degenerative changes." (Ex. 17 at 7-8, Docket No. 74-12).

- Dr. Beavers: "The IME was done by Dr. Saris. Physical examination was unremarkable. The doctor found no impairment. Dr. Saris concluded the examination showed no "neurological injury" and neuroimaging showed no abnormality, only age-appropriate degenerative changes." (Ex. 18 at 2, Docket No. 74-13).

- Dr. Sternbergh: "There has been no medical explanation for back pain of sufficient intensity to prevent this level of physical activity." (Ex. 24 at 5, Docket No. 74-24).

Yet in his deposition, Dr. Beavers admitted that chronic pain can be disabling, even in the absence of "objective" exam findings. (Beavers Dep. at 96:1-5, Docket No. 73-8).  A reasonable person could find that the insistence by Unum's reviewing physicians (including Dr. Saris, who is not an UNUM-employed physician, but conducted the IME on Unum's behalf) on objective evidence led them to discount subjective evidence of impairment, culminating in an inadequate investigation.

Citing the First Circuit's decision in *Pediatricians*, Unum reminds the Court that § 3(9)(d) only requires *reasonable* investigation.  *Pediatricians, Inc. v. Provident Lift & Acc. Co.*, 965 F.2d 1164 (1st Cir. 1991).  Unum trumpets Dr. Saris' "unequivocal" IME as an adequate basis for denying Plaintiff's claim and proof that it conducted a thorough, professional, and responsive investigation.  (Dft's Br. at 17, Docket No. 56).  But as discussed under my analysis of Plaintiff's 9(a) misrepresentation claims, *see supra* Part II.A, Unum failed to demonstrate that it took any steps to investigate Plaintiff's serious and substantial allegations about the IME's thoroughness and conclusions about the Plaintiff's physical fitness for work.  Yet Unum continued to rely on the IME – a reasonable person could find that such reliance was unjustified and grounds for a 3(d) violation for inadequate investigation.

Plaintiff also alleges that Unum failed to sufficiently defer to the opinions of Plaintiff's attending physicians, including Dr. Brasier, Dr. Cataldo, Dr. Niles, and Dr. Elson.  Unum's Claim Manual requires "giving deference to the opinion of a claimant's AP [attending physician]

when making a medical determination."  (Ex. 73 at 3, Docket No. 70).  Under the amended terms

of the RSA, Unum must accord the attending physician's opinion "significant weight" unless

"the opinion is not well supported by medically acceptable clinical or diagnostic standards and is

inconsistent with other substantial evidence in the record."  (Ex. 63 at 156-57, Docket No. 74-

41).

Plaintiff sought treatment from multiple attending physicians.  Dr. Brasier certified the

Plaintiff as unable to work and maintained that opinion throughout Unum's investigation; Dr.

Cataldo completed attending physician reports in September 2016 and August 2017 for another

insurer and found disc herniation, lumbar spine arthritis, and physical restrictions supported by

the MRI and Plaintiff's self-reports that were incompatible with her work (Exs. 53 and 55,

Docket Nos. 70-17, 70-19); neurologist Dr. Niles, who conducted a physical examination and

reviewed the Plaintiff's MRIs and X-Rays, concluded that the cause of Plaintiff's symptoms was

unclear and that she exhibited limited range of motion in her back and tenderness in her upper

back (Claim File 1562-67); and Dr. Elson, a physiatrist who conducted a physical examination of

the Plaintiff and reviewed her MRI and X-Rays studies in May 2014, found and that the

Plaintiff's range of motion was limited and her imaging studies showed "mild degeneration of

L5-S1 intervertebral disc;" "small broad-based central L5-S1 disk protrusion" that "[t]ouches but

does not significantly compress or displace the transversing bilateral S1 nerve root" and "facet

joint arthritis." (Claim File at 696).  Dr. Saris did not defer to Dr. Brasier's certification of

permanent disability because he reviewed the same imaging studies and found that they were

normal.  Because Unum has not shown that Plaintiff's attending physicians' opinions were not

well supported by medically acceptable clinical or diagnostic standards such that Unum was not

under an obligation to defer or give them significant weight, Unum has not met the standard for

summary judgment as to Plaintiff's 9(d) claims.  ***Unum's motion for partial summary judgment as to 9(d) is denied.***

.

### D.  176D § 3(9)(f): Failure to Effectuate Settlement when Liability has become Reasonably Clear

§ 3(9)(f) requires insurers to "effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

According to Unum, summary judgment on Plaintiff's 9(f) claims is proper because Unum's liability never became reasonably clear.  Plaintiff lists more than six inflection points at which it believes that Unum's had become reasonably clear, based on Unum's receipt of additional medical records or documents pertaining to the Plaintiff from other insurers' claims files, including in August 2015, July 2017, October 2017, November 2017, June 2017, November 2017, and January 2018.  (Plft's Opp. Br. at 18, Docket No. 70).

As discussed in Part III.C., whether an insurer's liability became reasonably clear is assessed under an objective standard.  "The fact finder determines 'whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insure[d] or ([or insurer]) was liable to the plaintiff." *McLaughlin v. American States Ins. Co.*, 90 Mass.App.Ct. 22, 29-30 (2016).  Summary judgment on Plaintiff's 3(f) claim is not appropriate because the Plaintiff has created a genuine issue of material fact that the new evidence which Plaintiff provided with her 93A Demand Letter in August 2015 would probably have led a reasonable person with knowledge of the relevant facts and law to conclude that Unum was liable to the Plaintiff under both policies.  Like Plaintiff's 9(b) and 9(d) claims, it will have to be adjudicated at trial. ***Unum's motion for partial summary judgment as to Plaintiff's 9(f) claim is denied.***

## **Conclusion**

Defendants' Motion for Partial Summary Judgment on Plaintiff's First Cause of Action is

***granted in part and denied in part***:

- Defendants' Motion for Partial Summary Judgment is ***granted*** as to c. 176D § 3(9)(a);
- Defendants' Motion for Partial Summary Judgment is ***denied*** as to c. 176D § 3(9)(b);
- Defendants' Motion for Partial Summary Judgment is ***denied*** as to c. 176D § 3(9)(d);
- Defendants' Motion for Partial Summary Judgment is ***denied*** as to c. 176D § 3(9)(f).

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**